## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
_____

FIRST MERCURY INSURANCE COMPANY,

      Plaintiff,

      v.                            No. 1:14-CV-01052 WJ/LAM

CINCINNATI INSURANCE COMPANY,

      Defendant/Counter-Plaintiff

      and

BINGHAM CONSTRUCTION INC.,
JENNIE CORONA, DAVID P. GARCIA,
As Personal Representative of the Estate
of JOSE CORONA-PULIDO, and HIGH
DESERT ROOFING, INC.,

      Defendants.

### MEMORANDUM OPINION AND ORDER
### GRANTING IN PART and DENYING IN PART
### PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

        THIS MATTER comes before the Court upon a Motion for Summary Judgment by First Mercury Insurance Company, filed on July 14, 2016 **(Doc. 53)** and a Motion for Summary Judgment filed on July 22, 2016 by Cincinnati Insurance Company **(Doc. 58)**.   Having reviewed the parties' briefs and applicable law, the Court finds that both motions shall be granted in part and denied in part as set forth in this opinion.

### BACKGROUND

        This is a declaratory judgment action filed to resolve a coverage dispute between two insurers, Plaintiff First Mercury Insurance Company ("Plaintiff" or "First Mercury") and

Cincinnati Insurance Company ("Cincinnati" or "Defendant").[1] The dispute stems from a state court lawsuit for wrongful death brought by Jennie Corona, David P. Garcia, and Jose Corona-Pulido ("Casey") against Bingham Construction, Inc. ("Bingham" or "Bingham Construction"), and which was filed as *Corona v. Bingham Construction Inc.,* No. D-101-CV-2013-01731 in the County of Santa Fe, First Judicial District, State of New Mexico ("underlying lawsuit").  The underlying lawsuit alleges that Jose Corona ("Mr. Corona") died in a roofing accident while working for High Desert Roofing ("High Desert"), the roofing subcontractor for Bingham Construction.  While attempting to insulate the vestibule attic at a construction site, Mr. Corona fell through an open hole over 20 feet above a concrete surface.  The hole had been cut at the direction of a Bingham employee into the steel flooring of a vestibule attic and was covered only with loose pieces of plywood, thereby creating a dangerous and hazardous condition on the premises. Doc. 53, Ex. D. The underlying complaint alleges that Bingham employees created the hazardous condition that led to Mr. Corona's death and that Bingham Construction failed to maintain a safe working environment at the construction site where Mr. Corona died.

First Mercury issued a commercial general liability ("CGL") policy to High Desert, and Cincinnati issued a CGL policy to Bingham Construction. First Mercury defended Bingham Construction in the underlying lawsuit, pursuant to a reservation of its rights.  First Mercury also paid its policy limit of $1 million toward a settlement of the underlying lawsuit.  This case turns on the question of whether certain provisions in an insurance policy are rendered void under New Mexico law based on New Mexico's anti-indemnity statute, NMSA 1978 §56-7-1.  In this federal complaint, First Mercury seeks declaratory judgments regarding (1) the interpretation of a New Mexico statute, NMSA 1978 §56-7-1 (Count I); (2) policy language concerning whether

---

[1]  Parties have stipulated to the dismissal of Defendants Bingham Construction, High Desert Roofing, Jennie Corona and Jose Corona-Pulido ("Casey").  *See* Doc. 18.  The underlying lawsuit is also referred to in the pleadings as "the Pulido claim."  *See* Compl. aAt 5.

Bingham Construction is an "additional insured" on the First Mercury Policy (Count II); and (3) Cincinnati's obligations as to its duty to defend and indemnify Bingham Construction (Count III).

## I.     Undisputed Facts

The parties have filed cross-motions for summary judgment.  The Court will combine the facts presented by the parties and where necessary, point out those parts that are contested because the parties do not contest the relevant facts as those facts relate to the language of the policies, but rather contest the legal significance of those facts under New Mexico's anti-indemnity clause, NMSA §56-7-1.

### A.     First Mercury's Facts

Cincinnati issued insurance policy number EPP 010 47 24/EBA 010 47 24 to Bingham Construction ("Cincinnati Policy"). The Cincinnati Policy was in effect on the date of the accident in question. Among other things, the Cincinnati Policy provided commercial general liability coverage and umbrella coverage.

First Mercury issued insurance policy number IL-CGL-0000003261-01 ("First Mercury Policy") which was in effect on the date of the accident in question.  High Desert is the first named insured on the First Mercury Policy. First Mercury contends that the only additional named insured on the First Mercury Policy was Frank's Supply Co., Inc., but Cincinnati disputes this fact, contending that Bingham is an additional insured under the First Mercury Policy.  The First Mercury Policy describes who is insured under the liability coverage of the policy:

1.   If you are designated in the Declarations as:

    d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your 'executive officers' and directors are insureds, but only with respect to their duties as your officers

3

or directors. Your stockholders are also insureds, but only with respect to
their liability as stockholders.

Ex. B. at 9 (Section II – "Who is An Insured").

Bingham and High Desert entered into a contract on July 3, 2012.  Doc. 53, Ex. C. The

contract ("Indemnity Agreement") provided that High Desert would provide certain construction

work on a building in Farmington.  It also provided that High Desert will maintain certain

insurance and that the insurance policies:

> shall be endorsed **to add [Bingham], the Owner and their parent companies,
> subsidiaries and affiliated companies as additional insureds on a primary
> and non-contributory basis** and shall be endorsed to provide notice to
> [Bingham], in writing, by registered mail, at least thirty (30) days prior to the
> termination and before any changes are made in any policy which change restricts
> or reduces the insurance provided. **The insurance carried by [High Desert]
> naming [Bingharn] and the Owner as an additional insureds shall be
> primary** over any insurance policies carried by [Bingham] and the Owner.

Doc. 61-1 at 17-18 (emphasis added).[2]    The Indemnity Agreement   contains an

indemnity clause stating, in pertinent part:

> (k)    [HIGH DESERT] SHALL ALSO, DEFEND, INDEMNIFY AND HOLD
> HARMLESS [BINGHAM], OWNER AND [BINGHAM'S] OTHER INDEMNITEES
> (AND THEIR OFFICERS, DIRECTORS, SHAREHOLDERS, AGENTS AND
> EMPLOYEES) (HEREINAFTER COLLECTIVELY REFERRED TO AS
> 'INDEMNIFIED PARTIES') FROM AND AGAINSTANY [sic] ALL CLAIMS,
> CAUSES OF ACTION (INCLUDING STRICT LIABILITY), LAWSUITS,
> JUDGMENTS, AND LIABILITY OF EVERY KIND, INCLUDING ALL EXPENSES
> OF LITIGATION, COURT COSTS, AND ATTORNEY'S FEES, FOR INJURY TO OR
> DEATH OF ANY PERSON (INCLUDING WITHOUT LIMITATION, [HIGH
> DESERT'S] EMPLOYEES) . . .  **ARISING OUT OF, RELATING TO OR IN
> CONNECTION WITH THE OPERATIONS, PERFORMANCE, OR ACTS OR
> OMISSIONS OF SUBCONTRACTOR** (INCLUDING ALL  EMPLOYEES, SUB-
> SUBCONTRACTORS, SUPPLIERS AND OTHERS FOR WHOM [HIGH DESERT] IS
> RESPONSIBLE), OR FOR THE WORK PERFORMED OR TO BE PERFORMED BY
> [HIGH DESERT]. [HIGH DESERT'S] **ABOVE STATED DUTY TO INDEMNIFY
> EXTENDS TO CLAIMS CAUSED OR ALLEGED TO BE CAUSED, IN WHOLE
> OR PART, BY THE NEGLIGENCE OF AN INDEMNIFIED PARTY. . .**

---

[2]   First Mercury represents in the motion that this provision is taken from Exhibit C attached to its summary
judgment motion. However, Exhibit C to the motion does not contain a copy of the subcontract indemnity provision.
Plaintiff has since supplemented the pleadings to include this provision, which is from Article 12 ("Insurance and
Indemnity").  *See* Doc. 61-1 at 17-18.

(p) NOTE: THESE INDEMNIFICATION OBLIGATIONS INCLUDE INDEMNIFYING THE INDEMNITIES [sic] FOR THEIR OWN NEGLIGENCE, WHETHER SOLE OR CONCURRENT.

*Id.*at 18 (emphasis added). First Mercury was not a party to the contract between High Desert and Bingham.  Doc. 58, Ex. A.[3]

On September 4, 2012, Jose Corona, employee of High Desert, fell through an opening in the attic of the building while picking up a piece of plywood covering a hole in the steel flooring in the attic area at the construction site.  He died shortly thereafter.[4]  The Personal Representative of Mr. Corona's Estate and others filed the underlying lawsuit against Bingham in the First Judicial District of the State of New Mexico.  Bingham was the only Defendant in the underlying lawsuit.  Ex. D (First Amended Complaint in the underlying lawsuit).  In the underlying lawsuit, plaintiffs alleged that Bingham owed and breach a duty to ensure that the hole it cut into the flooring of the vestibule/attic area was properly secured, marked and covered to prevent workers from falling through the opening.  Bingham alleged, as a defense to the action, that Mr. Corona and others at High Desert were at fault for the accident.  Cincinnati does not dispute these facts, but contends that Plaintiff has omitted facts pertaining to the negligence of High Desert and/or Mr. Corona in its presentation of facts and that these facts are material to the coverage issues. *See* Ex. E (Pretrial Order, the underlying lawsuit).

Cincinnati initially provided the defense for Bingham in the underlying lawsuit, but Bingham subsequently tendered the defense and indemnity of the case to First Mercury, alleging that the contract between Bingham and High Desert made Bingham an additional insured under the First Mercury Policy.  In December of 2014, First Mercury offered to pay its entire policy

---

[3] This statement is actually from Defendant's Fact 12, but the Court included it here In Fact 12.

[4] Plaintiff's Fact 8 states that "*Juan* Corona" fell through the opening in the attic, but the Court assumes this is a typographical error, given that the state court complaint identifies "*Jose* Corona" as the deceased.  Ex. D, ¶¶1 & 2.

limit in settlement of the underlying lawsuit, but also requested that Cincinnati reassume providing a defense to Bingham. Doc. 58, Ex. F. First Mercury paid its policy limit, which was $1 million, toward the settlement of the underlying lawsuit pursuant to a reservation of rights, and the underlying lawsuit was settled. Cincinnati contends that First Mercury was obligated to defend and indemnify Bingham Construction in the underlying lawsuit without imposing any conditions or "reservation of rights" on those obligations.[5]

     B.    <u>Cincinnati's Facts</u>

Cincinnati presents its own set of related facts in its cross-motion for summary judgment. The Court will omit facts that overlap those presented by Plaintiff, general information which has already been presented, and statements that are either unsupported or conclusory.

Cincinnati's version of the facts includes evidence supporting its position that Mr. Corona's death was caused by the negligence High Desert and its employees. During an interview with OSHA, the president of High Desert, Bob Bauder, stated that "[w]e told Jose that he had to go in and take a look at it and find out if we were supposed to use that access, what was done with it because it was supposed to have some kind of framing around it or some kind of closure was supposed to be on there." Ex. C at 14-15. Mr. Bauder confirmed that High Desert "knew that there was some kind of hole in that floor." Ex. C at 17. Mr. Bauder further stated that Mr. Corona was sent in to "try and figure out" why the access hole was there and also to determine an access for the roofers. Ex. C at 45-15. Mr. Corona was not wearing fall protection at the time of the fall. Ex. D at 80:18-20. First Mercury does not dispute these facts, but

---

[5] Cincinnati claims that First Mercury did not issue a proper reservation of rights and instead informed Bingham in a letter that it "is afforded coverage subject to the exclusions and limitations of the policy" and that as a result "Bingham may not be covered under the policy." Pltff's Fact 14 & Resp. There is no dispute as to what the letter said, however, and Cincinnati's view of First Mercury's reservation of rights as improper is a legal conclusion which is inappropriate in a Rule 56 presentation of material facts.

contends that they are not relevant.   The Court disagrees with First Mercury, but reserves

discussion on this issue for later in the analysis.

The Corona Estate contended that while Jose Corona was an employee of High Desert,

Bingham "controlled the premises and the work being performed at the site, and was responsible

for safety at the construction site."   Doc. 58, Ex. B (amended complaint in the underlying

lawsuit).  On August 19, 2013, Cincinnati tendered the defense of Bingham Construction to First

Mercury.  Doc. 58, Ex. F.

The First Mercury Policy issued to High Desert includes the following Additional Insured

Endorsement:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

**Name Of Additional Insured Person(s)**
**Or Organization(s):**
As required by written contract signed by both parties
prior to loss

**Location(s) Of Covered Operations**
All Locations

A. **Section II – Who Is An Insured** is amended to
include as an additional insured the person(s) or
organization(s) shown in the Schedule, but only
with respect to liability for "bodily injury",
"property damage" or "personal and advertising
injury" caused, in whole or in part, by:

1. Your acts or omissions; or
2. The acts or omissions of those acting on
your behalf;

in the performance of your ongoing operations
for the additional insured(s) at the location(s)
designated above.

B. With respect to the insurance afforded to these
additional insureds, the following additional
exclusions apply:

This insurance does not apply to "bodily injury"
or "property damage" occurring after:

1. All work, including materials, parts or
equipment furnished in connection with such
work, on the project (other than service,
maintenance or repairs) to be performed by
or on behalf of the additional insured(s) at
the location of the covered operations has
been completed; or

2. That portion of "your work" out of which the
injury or damage arises has been put to its
intended use by any person or organization
other   than   another   contractor   or
subcontractor   engaged   in   performing
operations for a principal as a part of the
same project.

Doc. 58, Ex. I at 5.

Defendant also includes provisions from the First Mercury Policy pertaining to coverage

for bodily injury and property damage liability, including an exclusion of coverage for bodily

injury or property damage "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."   Doc. 58, Ex. I at 3.

In its statement of facts, Defendant includes provisions dealing with "other insurance clauses." As previously mentioned above in Plaintiff's presentation of facts, Bingham Construction is also the named insured under the Cincinnati Policy, which includes coverage for bodily injury and property damage liability which is subject to certain limitations.

The Cincinnati Policy states that its insurance coverage is "excess over . . . [a]ny other primary insurance available to the insured covering liability for damages arising out of the premises or operations . . . **for which the insured has been added as an additional insured by attachment of an endorsement**." Doc. 58, Ex. K at 3 (emphasis added).  The First Mercury Policy also contains an "other insurance" clause which states:

> . . . Where required by a written contract signed by both parties, the [First Mercury] insurance will be primary & [sic] non-contributing only when and to the extent as required by that contract.

> . . . If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, **each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insureds**.

Doc. 58, Ex. I at 1 (emphasis added).

## II.    Parties' Positions

The total insurance provided by the First Mercury and Cincinnati policies for the settlement of the underlying  case was $6 million: $1 million came from First Mercury, and $5 million was paid out by Cincinnati, resulting in a ratio of approximately 16.7% for First Mercury and 83.3% for Cincinnati.  *See* Doc. 60 at 7.  First Mercury's position is that the subcontract Indemnity Agreement between Bingham Construction and High Desert is void under New Mexico's anti-indemnity statute, NMSA §56-7-1.  *See* Jt. Status Rep't, Doc. 24.  First Mercury

8

argues that it was not obligated to pay any of the $1 million and that Cincinnati is therefore obligated to pay 100% of the indemnity obligation and reimburse First Mercury for all of the $1 million paid out in settlement of the underlying lawsuit.  First Mercury further maintains that even if it does have a duty to Bingham, Cincinnati  is obligated to pay its applicable percentage (83.3%) of the $1 million indemnity obligation under the "other insurance" provisions in the First Mercury Policy.

Cincinnati contends that First Mercury had the primary duty to defend and indemnify Bingham in relation to the underlying lawsuit because Bingham is an additional insured under the First Mercury Policy issued to High Desert. Cincinnati also contends that New Mexico's anti-indemnity statute does not preclude primary coverage for Bingham under the First Mercury Policy and that therefore Cincinnati does not owe First Mercury any amount of the $1 million which was paid by First Mercury to settle the underlying lawsuit.

## III.   Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where there is an absence of evidence to support the nonmoving party's case, summary judgment is appropriate.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc*., 939 F.2d 887, 891 (10th Cir. 1991). A genuine issue of fact is one that "can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986).  Importantly, summary judgment is appropriate "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at

249 (internal citations omitted).

## DISCUSSION

The resolution of this case depends on the answer to two questions: (1) whether the Indemnification Agreement between High Desert and Bingham is contrary to New Mexico's anti-indemnity provision, NMSA 1978 §56-7-1; and (2) whether Bingham Construction is an "additional insured" under the First Mercury Policy. Absent any ambiguity, the construction of a contract is a question of law, and whether an agreement contains an ambiguity is also a question of law. *Boatwright v. Howard*, 102 N.M. 262, 263 (1985) (citing *Schaefer v. Hinkle*, 93 N.M. 129, 597 P.2d 314 (1979) ("It is the role of the courts to interpret and enforce a contract as written by the parties."). When the insurance policy is unambiguous, a court must enforce its terms. *Sanchez v. Herrera,* 109 N.M. 155, 159 (1989).

New Mexico's anti-indemnity statute furthers public policy by promoting safety in construction projects by holding each party to the contract accountable for injuries caused by its own negligence. *See Tucker v. R.A. Hanson Co.,* 956 F.2d 215, 218 (10th Cir.1992) (noting that "[t]he purpose of [Section 56–7–1] is to protect construction workers and future occupants of a building by ensuring that all those involved in its construction know that they will be held financially liable for their negligence"). The statute states, in pertinent part:

A. A provision in a construction contract that requires one party to the contract to indemnify, hold harmless, insure or defend the other party to the contract, including the other party's employees or agents, against liability, claims, damages, losses or expenses, including attorney fees, arising out of bodily injury to persons or damage to property caused by or resulting from, in whole or part, the **negligence, act or omission of the indemnitee**, its officers, employees or agents, **is void, unenforceable and against the public policy of the state**.

B. **A construction contract may contain a provision that, or shall be enforced only to the extent that, it:**

(1) Requires one party to the contract to indemnify, hold harmless or insure the other party to the contract, including its officers, employees or agents, against liability, claims, damages, losses or expenses, including attorney fees, **only to the extent that the liability, damages, losses or costs are caused by, or arise out of, the acts or omissions of the indemnitor** or its officers, employees or agents; or

(2) Requires a party to the contract to purchase a **project-specific insurance policy**, including an owner's or contractor's protective insurance, project management protective liability insurance or builder's risk insurance.

C.  This section does not apply to  . . . **an insurer's obligations to its insureds**.

F.  **As used in this section, "indemnify" or "hold harmless" includes any requirement to name the indemnified party as an additional insured in the indemnitor's insurance coverage for the purpose of providing indemnification for any liability not otherwise allowed in this section.**

(Emphasis supplied.)

It is undisputed that the Indemnity Agreement between High Desert and Bingham qualifies as a "construction contract" under §56-7-1.

I.      **Whether Bingham Construction is an Additional Insured**

The Additional Insured Endorsement provision in the First Mercury Policy is for "Owners, Lessees or Contractors." Doc. 58-9 at 5.  The Schedule names as additional insureds those individuals or organizations who are listed "[a]s required by written contract signed by to other parties prior to loss."  Doc. 58-9 at 5.

The provision also specifies that the added individual is included as an "additional insured" "only with respect" to "**your** acts or omissions; or . . . [t]he acts or omissions of those acting on your behalf . . . in the performance of **your** ongoing operations for the **additional insured(s)** at the location(s) designated above." *Id.* (emphasis added).  Cincinnati contends that this language is ambiguous because "**your**" in the phrases "**Your** acts or omissions" and "acting on **your** behalf" could mean either the named insured or the additional insured.  The Court

disagrees with Cincinnati because this reading lifts this language out of context.  The phrase "**your** ongoing operations" must refer to High Desert's operations, because it would make no sense to refer to Bingham Construction as both "your" **and** "additional insured" within the same phrase.  *See Battishill v. Farmers Alliance Ins. Co*., 139 N.M. 24, 26 (N.M.,2006) (An insurance policy "is not rendered ambiguous merely because a term is not defined; rather, the term must be interpreted in its usual, ordinary, and popular sense").  The Additional Insured Endorsement language can only be read to mean that the First Mercury Policy covers additional insureds (such as Bingham) only where claims for bodily injury or property damage are the result of the acts or omissions of High Desert (or those acting on its behalf), and not for acts or omissions of the additional insured, which is Bingham in this case. Cincinnati may disagree with this construction, but it is based on a plain, common-sense reading of the language and Cincinnati's disagreement with this reading does not create an ambiguity.  *See Safeco Ins. Co. of Am., Inc. v. McKenna,* 90 N.M. 516, 520 (1977) ("Resort will not be made to a strained construction for the purpose of creating an ambiguity when no ambiguity in fact exists."); *see also United Nuclear Corp. v. Allstate Ins. Co*., 285 P.3d 644, 647–48 (N.M.,2012) (reviewing courts should not "create ambiguity where none exists, and an ambiguity does not exist merely because the parties hold competing interpretations" about the meaning of a policy provision).

Cincinnati relies on a Tenth Circuit case, *Marathon Ashland Pipe Line LLC v. Maryland Cas. Co*., to bolster its position that the First Mercury Additional Insured Endorsement provides coverage for Bingham as an additional insured for claims arising from its own negligence.  243 F.3d 1232, 1241 (10th Cir. 2001) ("*Marathon"*).  However, that case is distinguishable.  In *Marathon,* Maryland Casualty Insurance Company issued a commercial liability policy to a building erection company, Steel Structures, Inc. ("SSI"), a subcontractor, which contained an

endorsement provision to name Marathon, the general contractor, as an additional insured.  The policy contained an endorsement which stated that it "was amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability **arising out of your ongoing operations** performed for that insured." 243 F.3d at 1237 (emphasis added). There was also a service contract between the parties requiring that SSI would cover any work SSI performed at Marathon's request. The Tenth Circuit court reversed the district court's finding that as the named insured, the subcontractor must be primarily negligent for the endorsement provision to apply, and also found that the policy's use of "you" language was ambiguous as to whether it referred to additional insureds, and therefore the policy language must be interpreted in favor of Marathon as an additional insured.  The Tenth Circuit referred to cases from other jurisdictions such as Kansas and Texas, and concluded that Wyoming would follow the "majority rule" which interprets policies with identical language as providing coverage for the additional insured's liability arising out of its sole negligence.

While *Marathon* sounds promising for Cincinnati's position, there are two problems with this argument.  First, there was no mention (much less discussion) of an anti-indemnity statute that would prohibit one party from indemnifying another party for the indemnitee's own acts of negligence.  It is not clear whether the states following the majority rule referenced in *Marathon* had  anti-indemnity statutes, but at any rate, none of the parties raised the question of what kind of effect this type of statute would have on the analysis had there been an anti-indemnity statute. As a result, the Tenth Circuit limited its analysis to contract interpretation and never had the opportunity to address whether the policy language in *Marathon* would be enforceable in the face of an anti-indemnity statute such as New Mexico's anti-indemnity statute.  Second, the policy language in *Marathon* is different from the language in the First Mercury Policy. Unlike

the SSI policy in *Marathon*, the Additional Insured Endorsement in the First Mercury Policy specifies *whose* acts or omissions are covered.  Because the holding in *Marathon* was limited to policy language that was identical to the SSI policy, that case does not apply here.  243 F.3d at 1240 ("We have held  . . . that an endorsement provision with *identical* language provides coverage for an additional insured's liability arising out of its own negligence.") (emphasis added).

Cincinnati also cites to *Roy Anderson Corp. v. Transcontinental Ins. Co*., a Southern District of Mississippi case, to argue that the terms of the Additional Insured Endorsement are ambiguous and thus should be construed against First Mercury as the drafter of the policy.  358 F.Supp.2d 553, 565 (S.D.Miss. 2005).  In that case, the court found that the policy language did not limit coverage of the contractor as the additional insured to vicarious liability for the subcontractor's negligence.  Even though the underlying complaint did not allege that plaintiff's injury was caused by the subcontractor, the court found that the policy covered the additional insured because only a causal connection to "your work" was required to trigger a duty to defend and provide coverage. This case does not help Cincinnati either because the "additional insured" language in that case is almost identical to the provision in the SSI policy which provided coverage for an additional insured for liability "**arising out of** your work" for the additional insured, with no other descriptive or limiting language.  358 F.Supp.2d at 560.  This language is also broader than the First Mercury provision, which expressly identifies whose acts or omissions are covered.

The *Roy Anderson* decision also cited to a Tenth Circuit case, *McIntosh v. Scottsdale Ins. Co*., which involved similar "arising out of" language in an additional insured endorsement.  992 F.2d 251, 254–55 (10th Cir. 1993) (applying Kansas law).  The City of Wichita, Kansas

("Wichita") was an additional insured on a policy issued to Wichita Festivals, Inc. ("Festivals"), which ran the annual city festival.  An attendee at the festival took a shortcut to one of the portable toilets and in doing so jumped over a low retaining wall, fell about twenty feet and suffered several injuries.  The City stipulated to 100% liability in exchange for plaintiffs' agreement not to execute against the City's assets. The case was tried on damages only and judgment was entered against the City for a little more than $74,751.00.  Plaintiffs then filed an action in state court against the insurer (which was subsequently removed to the United States District Court for the District of Kansas), alleging that the insurer owed the City coverage for the tort judgment as an additional insured. The additional insured endorsement in that policy provided coverage to an additional insured "only with respect to liability arising out of operations performed for such insured by or on behalf of the named insured." *Id.* The court found that the phrase "arising out of" clearly related to causation, but was "both broad and vague."  *Id.* at 254.  The court concluded that the facts of the case demonstrated the requisite causal connection, which was a "more liberal concept . . . than proximate cause," and that the City's liability "arose out of" Festivals' operations" since plaintiff was injured while walking to portable toilets set up by Festivals.  *Id.* at 255.  The Kansas court held that the insurer owed the City coverage for the tort judgment.

The Court mentions these cases to emphasize that the Additional Insured Endorsement in the First Mercury Policy was carefully worded to include language limiting an additional insured's coverage in a way that was not done in these other cases.  It has been noted that the issue of coverage for an additional insured's sole negligence is "fast becoming the majority rule, particularly under broad 'arising under' language." *Mid-Continent Cas. Co. v. Swift Energy Co*., 206 F.3d 487, 498 (5th Cir. 2000) ("majority view appears to be that for liability to 'arise out of

operations' of a named insured it is not necessary for the named insured's acts to have 'caused' the accident; rather, it is sufficient that the named insured's employee was injured while present at the scene in connection with performing the named insured's business, even if the cause of the injury was the negligence of the additional insured.").  The First Mercury Policy, however, does not contain "arising under" language which may be susceptible to this more liberal interpretation.

Unlike the endorsements in the *Marathon, Roy Anderson* and *McIntosh* cases, the First Mercury Policy contains unambiguous language including Bingham Construction as an additional insured but that language limits coverage for Bingham to **[High Desert's] "acts or omissions"** "in the performance of [its] ongoing operations for [Bingham]."  The First Mercury Policy therefore limits coverage for Bingham by providing coverage "only with respect" to liability for injury or damage caused in whole or in part by High Desert's negligence.  Coverage under the First Mercury Policy does not extend to coverage for Bingham's own acts of negligence.

## II.      Application of New Mexico's Anti-Indemnity Statute

First Mercury contends that it has no duty at all to Bingham because the Indemnity Agreement is void under §56-7-1.  Thus, Bingham cannot be an additional insured under the First Mercury Policy.  Cincinnati takes the opposite view, arguing that not only is Bingham an additional insured under the First Mercury Policy, but also that First Mercury is obligated to defend and indemnify Bingham in the underlying lawsuit, whether the claims arise from Bingham's negligence or High Desert's negligence.

Both First Mercury and Cincinnati acknowledge that the Indemnity Agreement clause in which High Desert indemnifies Bingham for Bingham's negligent acts and omissions is contrary to New Mexico's anti-indemnity statute.  *See* Doc. 61-1 at 17-18 ("Article 12. Insurance and

Indemnity," ¶¶(i)-(k)).  However, First Mercury takes the position that the anti-indemnity statute renders the *entire* Indemnity Agreement between High Desert and Bingham as void, including the provision contained in that contract which requires that Bingham be added as an additional insured on High Desert's insurance policy.  Thus, First Mercury argues, the Additional Insured Endorsement in the First Mercury Policy is also void and Bingham cannot be an additional insured under that policy. However, while the Indemnity Agreement is contrary to the statute in requiring High Desert to indemnify Bingham for its own negligence, the other provisions (such as requiring High Desert to add Bingham as an additional insured) are still enforceable.  *Cmp., e.g., Rivera v. American Gen'l Financial Serv., Inc.* 259 P.3d 803, 819 (N.M.,2011) (where contract term is unconscionable, court can refuse to enforce contract or limit application of any unconscionable term).

Additionally, the Court agrees with Cincinnati that First Mercury incorrectly relies on the anti-indemnity statute to vitiate Bingham's status as an insured and to deny coverage based on that statute without implicating any of First Mercury's obligations to its insureds.  The Indemnity Agreement is a private agreement between High Desert and Bingham Construction (*see* Doc. 58-1) whereas the Additional Insured Endorsement (Doc. 58-1) is part of an insurance policy issued by First Mercury Policy to High Desert. New Mexico's anti-indemnity statute prohibits indemnification of indemnitees for their own negligence in construction indemnity agreements, but the statute "does not apply . . . to an insurer's obligation to its insureds." NMSA 1978 §56-7-1(C). First Mercury's only obligation to its insured—both the named and additional insured—is contained within the policy terms.  *See Knowles v. United Services Auto. Ass'n,* 113 N.M. 703, 705 (N.M.,1992) (An insurer's obligation to its insured is contractual and must "be determined by the terms of the policy).  The terms of the Additional Insured Endorsement limit coverage for

Bingham to High Desert's own acts or omissions "in its performance of ongoing operations" for Bingham.  Since there is no mention of covering or indemnifying Bingham for its own acts or omissions in the First Mercury Policy, the terms of the Additional Endorsement Policy are not contrary to the anti-indemnity statute and essentially describe First Mercury's obligation to Bingham.

The Court therefore finds that the provision in the Indemnity Agreement between High Desert and Bingham requiring High Desert to indemnify Bingham for Bingham's negligence is contrary to the statute and is void and unenforceable.  However, the provision in the Indemnity Agreement requiring High Desert to add Bingham as an additional insured is not contrary to the statute.  Further, the Additional Insured Endorsement in the First Mercury Policy is not contrary to the statute either because it does not obligate First Mercury to cover Bingham as an additional insured for liability for bodily injury and damage caused by its own negligent acts or omissions. *See* Doc. 58-9 at 5.

Because the language in the Additional Insured Endorsement is not contrary to New Mexico's anti-indemnity statute, the Court need not determine here whether the Additional Insured Endorsement would be contrary to the statute if it purported to indemnify Bingham for its own negligence, or whether such a requirement would be excepted from the statute under subsection (C).  However, both parties have referenced a case which has made that determination, and which the Court finds worth discussing for its thorough analysis of the issue. *See* Doc. 58 at 11; Doc. 60 at 6.  Few courts have addressed the specific issue of how anti-indemnity statutes affect *insurance* agreements to indemnify the contractor for its own negligence.  In *Roy Anderson Corp. v. Transcontinental Ins. Co. et al.,* the court concluded that agreements to procure insurance coverage for a contractor, "when not linked to agreements to

indemnity," are not barred by the Mississippi anti-indemnity statute.  In other words, agreements to procure insurance coverage to cover a contractor for his own negligence is "a separate obligation" from an indemnity obligation, and as such are not barred by the anti-indemnity.  358 F.Supp.2d 553 (S.D.Miss. 2005).  First Mercury claims that the Mississippi anti-indemnity statute discussed in *Roy Anderson* is different from the New Mexico statute, but the Court is not convinced that the two statutes are all that different because the Mississippi statute also contains a provision very similar to the New Mexico statute which exempts insurance contracts from the operation of the statute. *Cmp.* NMSA §56-7-1(C) *with* Miss.Code.Ann. §31-5-41 ("This section does not apply to . . . insurance contracts or agreements").  In *Roy Anderson*, the court found there was a "distinction between insurance coverage and indemnification" and that while the Mississippi statute prohibited construction indemnification agreements which protect an indemnitee against its own acts of negligence, an insurance contract that indemnifies an additional insured from its own negligent acts was *not* void under the Mississippi statute.  358 F.Supp.2d at 567.

The court in *Roy Anderson* cited to the few other decisions which have distinguished agreements to procure insurance from agreements to indemnify and have held that agreements to procure insurance are *not* barred by anti-indemnity statutes.  For example, in *W.E. O'Neil Constr. Co. v. Gen'l Cas. Co. of Ill.,* the Illinois Appellate Court reasoned that "[a] promise to obtain insurance is different from a promise to indemnify").  748 N.E.2d 667 (2001) (cited in *Roy Anderson,* 358 F.Supp. 2d at 563).  The court reasoned that:

> [a]n agreement in a construction contract requiring a contractor to provide insurance for the general contractor protects the interests of the public and the construction workers because it ensures that there is a potential source of compensation for injuries . . . . [but that an insurance provision] stands separate and apart from the indemnity agreement as an agreement to purchase insurance for the general contractor.

748 N.E.2d at 672); *see also Chrysler Corp. v. Merrell & Garaguso, Inc.,* 796 A.2d 648 (Del. 2002) (concluding that insurance coverage is not void under an anti-indemnity statute when a subcontractor procures insurance coverage for a contractor).[6]

The Fifth Circuit has also noted a similar distinction between insured contracts and insured indemnity contracts, but it ultimately held that a contractor *cannot* enforce an agreement by a subcontractor to provide insurance coverage for indemnification for the contractor's own negligence. *See Crosby v. Gen.  Tire & Rubber Co*., 543 F.2d 1128 (5th Cir. 1976); *Certain London Mkt. Ins. Companies v. Penn. Nat'l Mut. Cas. Ins. Co*., 269 F.Supp.2d 722 (N.D.Miss.2003), aff'd, 106 Fed.Appx. 884, 2004 WL 1570356 (5th Cir.2004).   However, as noted by the court in *Roy Anderson*, the Fifth Circuit has not considered the issue of whether such coverage is void when the indemnitee is also named as an additional insured under the terms of the policy—which occurred in this case.

The parties have not provided, nor was the Court able to find, New Mexico cases addressing this specific issue.   The Court did find two cases which touched on New Mexico's anti-indemnity statute but did not provide any answers as to whether §56-7-1(C) operates to allow insurance agreements which indemnify contractors for their own negligence.   In one case, *City of Albuquerque v. BPLW Architects & Engineers, Inc*., there was an indemnity agreement between the contractor and the City of Albuquerque, but no insurance endorsement adding the City as an additional insured.   The New Mexico Court of Appeals addressed whether the insurer had a duty to defend but remanded the indemnification issue to the district court for factual

---

[6] The Fifth Circuit noted a similar distinction between insured contracts and insured indemnity contracts, but held that a contractor cannot enforce an agreement by a subcontractor to provide insurance coverage for indemnification for the contractor's own negligence. *See Crosby v. Gen. Tire & Rubber Co*., 543 F.2d 1128 (5th Cir. 1976); *Certain London Mkt. Ins. Companies v. Penn. Nat'l Mut. Cas. Ins. Co*., 269 F.Supp.2d 722 (N.D.Miss.2003), *aff'd*, 106 Fed.Appx. 884, 2004 WL 1570356 (5th Cir.2004).  However, as noted by the court in *Roy Anderson*, the Fifth Circuit has not considered the issue of whether such coverage is void when the indemnitee is also named as an additional insured under the terms of the policy.

findings.  146 N.M. 717, 724 (N.M.App., 2009).   In another case decided by the New Mexico

Court of Appeals, *Windham v. L.C.I.2, Inc*., the court discussed the anti-indemnity statute, but its

determination did not turn on the statute or any of its exceptions.   268 P.3d 528

(N.M.App.,2011).   There, the court found that the statute was not a bar to a defense and

indemnification because the contractor was not seeking indemnification for its own negligence,

but sought a defense to plaintiff's underlying lawsuit to the extent that the claims against the

contractor "arose out of" the subcontractor's acts or omissions.

Here, the Indemnity Agreement which obligates High Desert to indemnity Bingham for

Bingham's negligence is clearly contrary to New Mexico's anti-indemnity statute In this case

and is void as against public policy.   However, the Indemnity Agreement also contains a

provision requiring High Desert to have the insurance policy endorsed to add Bingham as an

additional insured (*see* Doc. 61-1 at 16 (Article 12, (d)), and the High Desert Policy was

subsequently endorsed to add Bingham as an additional insured.   Under the reasoning used by

the courts in *Roy Anderson, O'Neil* and *Chrysler,* that provision would appear to be preserved

from an anti-indemnity statute similar to the ones discussed in those cases, and would not be

contrary to the prohibitions listed in §56-7-1. However, because First Mercury's coverage of

Bingham as an additional insured is expressly confined to liability caused by High Desert's acts

and omissions, the Court need not determine whether insurance contracts issued to

subcontractors which indemnify contractors for their own negligence would be valid under New

Mexico's exception to indemnification agreements in §56-7-1(C).

## III.    First Mercury's Obligations Under the Policy

The final question is whether Cincinnati must reimburse First Mercury all, or a

percentage of, the $1 million is paid out to settle the underlying case.  According to the "other

insurance" provision in the First Mercury Policy, each insurer's share "is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all issues." Ex. I at 1. This ratio was followed in the shares contributed by First Mercury and Cincinnati in settling the underlying lawsuit, with First Mercury responsible for 16.7% (amounting to $1 million) and Cincinnati contributing 83.3% (amounting to $5 million). First Mercury first argues that Bingham was not an additional insured and so First Mercury was not obligated to defend or cover Bingham. The Court has already dispensed with this argument and has found that Bingham was indeed an additional insured under the policy. First Mercury then contends that even if Bingham was an additional insured, First Mercury was not obligated to extend coverage to its policy limits and that Cincinnati is obligated to reimburse First Mercury for 83.3% of its $1 million share in the settlement cost in the underlying lawsuit.

A.   Duty to Defend

The duty to indemnify is distinct from the duty to defend, and resolution of whether there is a duty to defend does not necessarily depend on there being a duty to indemnify. *Windham v. L.C.I.2, Inc*., 268 P.3d 528, 533 (N.M.App.,2011). An insurer is obligated to defend if the allegations of the injured third party's complaint show that an accident or occurrence comes within the coverage of the policy, regardless of the ultimate liability of the insured. *City of Albuquerque v. BPLW Architects & Engineers, Inc*., 146 N.M. at 726. Under New Mexico law, the duty to defend is separate from, and broader than, the duty to indemnify, *Knowles v. United Servs. Auto. Ass'n*, 113 N.M. at 704, and any doubt regarding the scope of coverage is resolved in favor of the insured, *see Hartford Fire Ins. Co. v. Gandy Dancer, LLC*, 864 F.Supp.2d 1157 (D.N.M. 2012).

The duty to defend arises when the language of a complaint states a claim that falls within the terms of the insurance contract. *City of Albuquerque v. BPLW Architects & Engineers, Inc.*, 146 N.M. at 722.  First Mercury contends that the underlying lawsuit did not hold Bingham liable for High Desert's acts and therefore no theory was alleged requiring a defense by First Mercury.  The complaint in the underlying lawsuit alleges that Bingham's negligence caused Mr. Corona's death.  Ex. D.  However, Bingham's defense was that Mr. Corona's injuries and his subsequent death were caused by his failure to wear fall protection gear and by High Desert's failure to select a safe means of performing work when it was aware of the access hole before the time Mr. Corona was instructed to enter the attic area. Ex. E at 8.  In other words, Bingham would be seeking a comparative negligence defense to plaintiff's underlying lawsuit based on Mr. Corona's acts or omissions and based on High Desert's acts or omissions in the performance of its operations for Bingham.  Because Bingham is covered as an additional insured under the First Mercury Policy, Bingham is entitled to a defense in the underlying lawsuit as to claims asserted against it which are allegedly caused by High Desert's negligent acts.  This defense comes within the coverage in the Additional Insured Endorsement because High Desert did the roofing in the performance of its "ongoing operations" for Bingham Construction.  *See, e.g., Windham v. L.C.I.2, Inc.*, 268 P.3d 528 (anti-indemnity statute not a bar to defense and indemnification under the policy where subcontractor did not seek indemnification, but rather a defense to plaintiffs' suit to extent the claims arose out of subcontractor's own negligence).

The problem in this case is that there is no way to know how the comparative negligence defense would have turned out, because the state court case settled before trial and without any finding or stipulation as to the percentage of fault attributable to the respective parties..  Because liability was never apportioned in the state court case, there is no method now by which

negligence can be apportioned and thus, no basis for requiring Cincinnati to reimburse First Mercury for any of its $1 million settlement share.  The "other insurance" provisions come into play with each insurer paying out the settlement costs based on the ratio of its applicable limit of insurance, but based on the total settlement amount  *See* Doc. 38-9 at 1.  The ratio cannot be modified or adjusted further, because no percentage of fault was attributed to any potentially responsible party.

There is no dispute  that the First Mercury Policy is primary and that the Cincinnati Policy is "excess over . . . [a]ny other primary insurance available to the insured." Doc. 58-11 at 3; Doc. 58-9 at 1; Doc. 61-1 at 17-18.   The Court finds that as primary insurer, First Mercury was obligated to defend Bingham Construction to the limits of its policy and thus, there is no basis to find that Cincinnati should reimburse any percentage of the amount paid out by First Mercury toward the settlement in the underlying lawsuit.

B.     Duty to Indemnify

Whether First Mercury has a duty to cover or indemnify Bingham in the underlying lawsuit is a separate question from the duty to defend. *Ins. Co. of N. Am. v. Wylie Corp.,* 105 N.M. 406, 409, 733 P.2d 854, 857 (1987) (resolution of whether a party has a duty to defend does not necessarily depend on there being a duty to indemnify).

As discussed above, as an additional insured under the First Mercury Policy, Bingham Construction is entitled to a defense by First Mercury.  As for coverage, under the terms of the First Mercury Policy and the Additional Insured Endorsement, First Mercury must provide coverage for Bingham as its primary insurer, but "only with respect" to Bingham's  liability for Mr. Corona's injuries which are caused in whole or in part by High Desert's acts or omissions in the performance of its "ongoing operations" for Bingham Construction.   Doc. 58-9 at 5.

Coverage is not provided for Bingham, however, for claims asserted against Bingham for its own acts or omissions, and so First Mercury cannot be considered as a primary insurer for such claims. First Mercury has the duty to cover Bingham Construction within these limitations, but there is no information on an apportionment of fault because the underlying lawsuit settled. The Court therefore finds that the "other insurance" provision dividing each insurer's share according to its ratio of applicable limit of insurance applies, basing this calculation on the $6 million settlement figure. Because the Court has determined that Bingham Construction was an additional insured on the First Mercury policy, and because there was no finding apportioning fault as to any of the parties, there is no basis to require Cincinnati to reimburse or take responsibility for any of the $1 million paid out by First Mercury.

## CONCLUSION

First Mercury has not fared well on any of its claims in this lawsuit because of its refusal to accept that it was the primary insurer for Bingham Construction, that Bingham was an additional insured on the policy issued to High Desert Roofing, and that it had a duty to defend Bingham as its additional insured. The Court has found against First Mercury on all these issues. In addition,  no apportionment of fault was ever determined because the state court case settled, and so there is no legal or factual basis to order Cincinnati to reimburse First Mercury for any of the money that it paid out in settlement. The Court observes that Cincinnati had its own obligations to Bingham Construction, and has honored those obligations, in the amount of $5 million, representing its policy limits. In sum, the Court finds and concludes as follows:

(1)     Bingham Construction was an additional insured under the First Mercury Policy, but only with respect to injuries that were caused by High Desert's acts or omissions in performing its duties for Bingham. Under the terms of the Additional Insured Endorsement, First

Mercury has no duty to cover Bingham for injury or damage caused by Bingham's own negligent acts or omissions because such coverage is not provided for in the Additional Insured Endorsement in the First Mercury Policy.

(2)    The Additional Insured Endorsement in the First Mercury Policy is not contrary to New Mexico's anti-indemnity statute, NMSA 1978 §56-7-1.

(3)    That part of the Indemnitee Agreement between High Desert and Bingham which requires High Desert to indemnify Bingham for its own negligence is contrary under the anti-indemnity statute and is therefore void and unenforceable, although other provisions in the Indemnitee Agreement are not contrary to the statute and are therefore enforceable, including the provision requiring High Desert to add Bingham Construction as an additional insured on High Desert's insurance policy.

(4)    As primary insurer, First Mercury was obligated to defend Bingham Construction in its defense to plaintiff's underlying lawsuit based on High Desert's acts or omissions, and there is no factual basis and thus, nothing in the record for the Court to find that Cincinnati should reimburse any percentage of the $1 million paid out by First Mercury toward the settlement in the underlying lawsuit.

(5)    First Mercury was also obligated to cover and indemnify Bingham but only to the extent that the injuries were caused by High Desert's acts or omissions in performing its duties for Bingham.  However, because fault was never apportioned in the underlying lawsuit, the "other insurance" provision dividing each insurer's share according to its ratio of applicable limit of insurance applies and First Mercury cannot claim a basis for reimbursement from Cincinnati for the $1 million it paid toward the settlement in the underlying lawsuit.

**THEREFORE,**

**IT IS HEREBY ORDERED with respect to First Mercury's Motion for Summary Judgment, that:**

- **Summary judgment is GRANTED IN PART** as to First Mercury's request for a declaration that the indemnity agreement between Bingham and High Desert is void under NMSA §56-7-1.  The provision in the Indemnity Agreement requiring High Desert to indemnify Bingham for Bingham's own negligence is contrary to New Mexico's anti-indemnity statute.   However, First Mercury's motion is **DENIED** as to the other provisions in the Indemnity Agreement in that the provision requiring High Desert to add Bingham as an additional insured on an insurance policy and providing the primary insurance to Bingham, are not contrary to the statute.

- **Summary judgment is DENIED** as to First Mercury's request for a declaration that Bingham is not an "additional insured" under the First Mercury Policy and that Bingham is therefore not covered at all under the First Mercury Policy and that First Mercury has no duty to defend, cover or indemnify Bingham Construction.  The Additional Insured Provision *does* cover Bingham for liability for bodily injury or property damage caused by High Desert's acts or omissions in the performance of High Desert's operations for Bingham; however, **summary judgment is GRANTED** to First Mercury to the extent that First Mercury has no obligation to provide coverage for Bingham for liability for bodily injury or property damage caused by Bingham's own acts or omissions.

- **Summary judgment is DENIED** as to First Mercury's request for a declaration that the coverage provided for Bingham as an additional insured under the First Mercury Policy is contrary to NMSA 1978 §56-7-1. The clause in the Indemnity Agreement in which High Desert purports to indemnify Bingham for claims of injury or damage caused or alleged

to be caused by Bingham's negligence in whole or in part was never made part of the Additional Insured Endorsement, and is separate from the insurance agreement between First Mercury and High Desert.  Further, under the express language of the Additional Insured Endorsement, First Mercury does not cover Bingham for Bingham's own negligent acts or omissions and therefore is *not* contrary to §56-7-1.  The Court finds it unnecessary to determine whether the Additional Insured Provision would be contrary to the statute if it provided covered for Bingham for its own negligence.

- **Summary judgment is DENIED** in that First Mercury has a duty to defend, cover and indemnify Bingham, and there is no factual basis in the record for the Court to order reimbursement from Cincinnati for any part of the $1 million First Mercurypaid toward the settlement, for the reasons stated above in this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED that with respect to Defendant Cincinnati's Motion for Summary Judgment:**

- **Summary judgment is GRANTED** as to Cincinnati's request for a declaration that Bingham is an  additional insured under the First Mercury Policy, and the Court hereby declares that  Bingham is an additional insured under the First Mercury Policy.

- **Summary judgment is GRANTED** as to Cincinnati's request for a declaration that First Mercury had the primary duty to defend and indemnify in the underlying lawsuit, and the Court hereby declares that First Mercury had the primary duty to defend and indemnify in the underlying lawsuit, but **summary judgment is DENIED** in that Bingham is *not* covered by the First Mercury Policy for claims of bodily injury or property damage caused by Bingham's own negligent acts or omissions.  Under the express terms of the Additional Insured Endorsement, Bingham is covered as an additional insured only as to

claims of bodily injury or damage caused by High Desert's acts or omissions or acts of omissions (or by those acting on High Desert's behalf).

- **Summary judgment is GRANTED** in its request for a declaration that Cincinnati owes First Mercury no reimbursement for all or any portion of the $1 million paid out by First Mercury in the settlement of the underlying lawsuit, and the Court hereby declares that First Mercury is not entitled for any reimbursement of the $1 million paid in settlement of the underlying lawsuit for the reasons stated above in this Memorandum Opinion and Order.

A FINAL JUDGMENT SHALL ISSUE SEPARATELY.

_____
UNITED STATES DISTRICT JUDGE